**CIVIL RICO CASE STATEMENT**
**PURSUANT TO LOCAL RULE 12.1**

1. Plaintiff M.J. alleges a violation of Florida Statutes §§ 772.103(3) (participation in an enterprise through a criminal activity) and 772.103(4) (conspiracy to do so). The following information describes both the § 772.103(3) claim and the § 772.103(4) conspiracy claim, with the additional note that the conspiracy was between defendant Jeffrey Epstein, Sarah Kellen, Nadia Marcinkova, Ghislaine Maxwell, Jean Luc Brunel and other persons whose identity is, at this time, unknown to M.J.. Epstein, Kellen, Marcinkova and others all conspired together to violate the provisions of § 772.103(3), doing so willfully and with full knowledge of the criminal activities that were planned as part of the criminal enterprise. For convenience in this statement, Florida Statutes §§ 772.103(3) and (4) will be referred to as the "Florida Civil RICO provisions."
2. Epstein served as the leader, boss, and "C.E.O." of the criminal enterprise. He also criminally sexually abused and prostituted M.J. and other minor girls who were victims of the criminal enterprise. He also paid for Kellen and Marcinkova and numerous other associates to be a part of the enterprise and conspired with them to commit criminal acts of sexual abuse and prostitution of minors. The basis for Epstein's liability is also described in M.J.'s complaint.
3. The other wrongdoers and criminal participants included Nadia Marcinkova, Ghislaine Maxwell, and Jean Luc Brunel. (M.J. is uncertain as to the precise spelling of their names and their full legal names.) They assisted defendant Jeffrey Epstein in recruiting and procuring minor girls to satisfy Epstein's criminal sexual purposes and for prostitution, as described in MJ's complaint, and to satisfy their own sexual interests. For example, to further the interests of the local Palm Beach chapter of this expansive criminal enterprise they helped to arrange for minor girls to travel to Epstein's West Palm Beach mansion to satisfy his sexual desires for minor girls. Kellen, Marcinkova and many others also conspired with Epstein to commit acts of sexual abuse and prostitution with minor girls and aided and abetted Epstein in the abuse and prostitution. Kellen, Marcinkova and other members of this criminal organization had full knowledge of the crimes of the enterprise; they knew full well that the girls who were coming to Epstein's mansion were minors and that Epstein was sexually abusing and prostituting these minors, some of whom were as young as 12. Kellen and Marcinkova willfully and knowingly participated in the activities of the enterprise and intended to make the criminal activities of the enterprise succeed. Among other things, Kellen helped arrange for recruiters of the minor girls. She also spoke personally to the recruiters as well as to the minor girls who were victims of Epstein's sexual abuse. At Epstein's specific direction, Kellen spoke to the recruiters about subjects such as finding more minor girls to satisfy Epstein's criminal sexual appetite. Kellen also served as Epstein's scheduler, scheduling appointments for the minor girls to ostensibly do "work" when in fact (as she well knew) she was scheduling them to be sexually abused and prostituted by Epstein. Kellen thus procured minor girls for prostitution and caused them to be prostituted and the term "work" was a code or slang word used by the various criminal enterprise members to avoid detection by law enforcement. Marcinkova, who is known to be Epstein's bisexual sex slave, also directly participated in the sexual abuse of the minor girls by participating in unlawful sexual activities and prostitution with the girls. Both Kellen and Marcinkova assisted Epstein in attempting to keep Epstein's criminal sexual abuse unknown

to law enforcement and other authorities and in discouraging the minor girls from reporting the crimes to law enforcement and other authorities. Maxwell and Brunel participated by helping to create the impression that the girls would be going to meet with Epstein for legitimate "modeling" purposes. Maxwell and Brunel specifically intended to have Epstein abuse the girls and acted with full awareness of Epstein's intentions. Both Brunel and Maxwell recruited minor females for Epstein as well as for themselves in an effort to further the goals of the criminal organization – to sexually abuse and molest underage minor females and avoid detection of law enforcement. Brunel used his modeling agency to locate underage girls for Epstein and others to sexually abuse. Maxwell personally brought underage girls to Epstein for him to sexually abuse, she also presented him with underage girls for him to maintain as sex slaves and to travel the globe with him and others, prostituting underage sex slaves to others. Maxwell was also a participant in sexually abusing minor females. Maxwell served many additional purposes for the criminal organization and was highly ranked within the organization, thus she was able to act on her own accord, without needing orders from Epstein. Maxwell's roles and actions on behalf of the criminal enterprise have included but not been limited to: procuring minor females for her and Epstein and others to sexually abuse, hiring personnel to work for Epstein and for the various positions in the criminal organization, developing relationships with politically connected individuals to protect the organization, managing and organizing the records of the enterprise, maintaining computer records and images of underage minor females with their names and phone numbers, threatening witnesses who have information that could hurt the enterprise, and assisting Epstein and other members of the criminal enterprise to continue the criminal activity of the organization and avoid law enforcement detection or prosecution.

4. The names of all of the victims are unknown to the plaintiff at this time. However, they include M.J. herself as well as the victims in the multitude of other civil cases, both filed and unfiled, against Epstein. A list of more than 30 such minor female victims was previously provided by the U.S. Attorney's Office for the Southern District of Florida to Epstein (but not to M.J.). The injuries to those victims resulted from criminal sexual activity and prostitution with Epstein and Marcinkova and at times Maxwell. The injuries they suffered are like those suffered by M.J. in this action, as described in her complaint. For example, M.J. and the other victims suffered grave emotional distress and financial injury from being forced to engage in unlawful sexual activities with him to which, as minors, they could not lawfully consent, and from being introduced into a deviant sexual lifestyle. They also suffered distress and financial injury from being prostituted by him.

5. The pattern of racketeering and/or criminal activity is also described in the complaint, which M.J. incorporates by reference into this statement here and at all other points in the statement. The criminal activity included Epstein using paid employees and underlings (including Kellen and Marcinkova) to repeatedly find, procure, and bring to him minor girls in order for Epstein to solicit, induce, coerce, entice, compel or force these minor girls to engage in unlawful sexual activity and acts of prostitution and Epstein using Ghislaine Maxwell and Jean Luc Brunel and others yet unnamed to create the impression that he was involved in legitimate modeling and other activities.

    a. The criminal activity and specific statutes violated are listed in the complaint and include, but are not necessarily limited to: (i) procuring for prostitution, or causing to be prostituted, minors, in violation of Florida Statutes Chapter 796; (ii) acts of battery in violation of Florida Statutes Chapter 784; (iii) commercial sexual exploitation of a

  child in violation of Florida Statues § 827.071; and (iv) tampering with a witness in violation of Florida Statutes § 914.22. The criminal activities also include violations of federal criminal statutes, including sexual trafficking of children by fraud, in violation of 18 U.S.C. § 1591, use of a means of interstate commerce to entice a minor to commit prostitution, in violation of 18 U.S.C. § 2422, as well as wire fraud, in violation of 18 U.S.C. § 1343.

b. The dates of the events are not fully known to M.J. at this time. However, at a minimum, Epstein obtained minor girls (including M.J.) for sexual purposes of the period of approximately 1998 through November 2005. Epstein could better determine than M.J. the precise dates of his abuse of her by reviewing his schedule or computer records for this period of time and looking for notations of days on which she performed "work" for him. Epstein has pled guilty to two such criminal offenses against minor girls, although the total number of indictable or chargeable offenses would easily number more than 1000. On each of these occasions, as described in the complaint, Epstein would have his underlings, co-conspirators or associates (including Kellen) procure a minor girl to satisfy his sexual desires and then would satisfy his sexual desires through criminal sexual contact with the minor girls. Epstein would also watch Marcinkova or Maxwell sexually abuse the minor girls to satisfy his sexual desires. Epstein had a particular interest in minor girls, including girls as young as 12. On occasion, he would turn away girls who were 18 or over because of his perverse and unlawful sexual interest in young girls. Epstein recruited and paid the girls for the sexual activities. In doing so, he procured for prostitution, and caused to be prostituted, many young girls under the age of 18, in violation of (among other statutes) Florida Statute § 796.03. The pattern of criminal and unlawful sexual activity extended from at least 1998 through November 2005 and upon information and belief actually existed and operated in a criminal organizational structure for many years prior to 1998. Epstein committed unlawful sexual abuse against M.J. at least 20 times between Summer of 2002 to Spring 2004 while she was a minor. Other criminal activities involving tampering with and harassing witnesses occurred from June 2002 through early 2008 (and perhaps later).

c. On many of the occasions, the exact dates of which are not as yet determined by the M.J., Epstein would represent that he was interested in a "massage" or legitimate "work" when in fact he was interested in unlawful sexual activity with the minor girls, including fondling the girls, masturbating in their presence, and vaginally penetrating them or causing them to be penetrated. Epstein and others acting under his direction falsely represented to the minor girls that he was interested in a "massage" or "work" when in fact he was interested in procuring the girls for unlawful sexual activity and acts of prostitution. Epstein and others acting under his direction used means of interstate communications to make these false representations, including cellular telephones. Similar to all known crime families or criminal organizations that operate to commit crimes, this criminal enterprise made use of seemingly innocuous code words such as "message" and "work" to describe the continuous criminal activity of procuring underage girls to sexually molest, abuse and exploit.

d. Epstein has pled guilty to two Florida felony criminal offenses against minor girls, as alleged in the complaint and Epstein is a Registered Sexual Offender for life.

e. The relationship of the criminal activity to the enterprise is also described in the complaint. The Florida offenses to which Epstein pled guilty are but a few of the many instances of his plan succeeding. The acts are all related to each other, are arranged, and are part of common plan for these reasons: they have the same intent (to gratify Epstein's unlawful sexual interest in minor girls as well as to gratify the unlawful sexual interests in minor girls of others at times); the same results (the unlawful sexual abuse and prostitution of minor girls); the same accomplices (including Kellen and frequently Marcinkova, Maxwell, and Brunel); the same victims (M.J. was herself victimized more than 20 times, and many other girls were also victimized repeatedly); the same means (there was a standard payment of several hundred dollars for going to the mansion, and standard escalation feature depending on the nature of the sexual acts that Epstein performed); the same methods of commission (Epstein obtained young, skinny, and attractive girls to satisfy his sexual desires while they were economically disadvantaged and lacked a stable family life and therefore, he perceived, would be interested in obtaining money and unlikely to report his crimes to law enforcement); and the same frequency (remarkably Epstein's criminal enterprise operated constantly to procure underage minor females to be sexually abused by Epstein every single day, oftentimes 2 or 3 different underage females in a single day). The acts were also interrelated by common characteristics, namely the identity of the perpetrator (Epstein and often Marcinkova or sometimes Maxwell) and the common results of his crimes (sexual abuse and acts of prostitution with minor girls). The acts also constituted a clear pattern of criminal activity, including giving the impression to the girls who were being recruited that they would have legitimate modeling opportunities.

6. The criminal acts of Epstein occurred repeatedly over a substantial period of time and were not isolated events. In particular, Epstein committed repeated (more than 20) criminal acts of sexual abuse against M.J. from approximately Summer 2002 to Spring 2004. He committed similar criminal acts of unlawful sexual activity and prostitution against other minor girls for a period of time from at least 1998 to November 2005. The acts occurred frequently during this time, so frequently that it is impossible to calculate how many different illegal sexual acts were committed by Epstein and his criminal enterprise, but it is fair to say that serious felonies were committed by this criminal organization on an everyday basis. The acts were part of Epstein's regular way of doing business (e.g., obtaining sexual gratification from minors) during this period of time. Epstein and others acting at his direction (including Kellen) made hundreds of telephone calls in furtherance of these illegal activities. The sexual acts against minors may have temporarily ceased in approximately November 2005 when Epstein learned that law enforcement authorities were investigating his crimes. Given Epstein's long history of sexually abusing minors and the frequency at which he has done so and the fact that despite his arrest and jail sentence his criminal organization remains intact, it is highly likely that he will continue his sexual desires for minor girls. In addition, Epstein committed criminal acts of tampering with witnesses in violation of Florida Statutes § 914.22. For example, Epstein paid the minor girls money not only with the intent to prostitute them but also with the specific intent of causing the minor girls not to communicate to law enforcement officers information about the sexual abuse committed against them. Epstein made bigger payments to the minor girls depending on the degree of force he used towards them, making larger payments when he was more concerned about the

fact they might report the crimes committed against them. Without specifically detailing acts committed against certain known minors, Epstein has paid $1000 on occasion after forcibly holding the head of a minor down and pumping his penis inside her against her will. Epstein has also intimidated and reprimanded his co-conspirators and associates for any cooperating with law enforcement and has made it known that his associates must stay loyal to the criminal enterprise above all else. These obstructions may interfere with the ability of law enforcement to discover and prosecute all of Epstein's crimes. They may likewise interfere with the ability of M.J. to discover all of the information supporting her claim. Epstein also selected impoverished girls for his crimes, believing that the payments would be more effective in obtaining their silence and that their economic circumstances might make them less likely to report to law enforcement. If all else failed, after having unlawful sex with the minor girls, Epstein would tell them not to tell anyone about their unlawful encounter or "bad things" would happen. In addition, since November 2005 and through the early part of 2008 (and perhaps later), Epstein and others acting at his direction have attempted to discourage the victims of his crimes from reporting his crimes and cooperating with law enforcement. For example, persons acting at the direction of Epstein have aggressively attempted to "interview" the victims or to "tail" the victims in their cars. They also harassed a victim shortly before she was to testify at a grand jury investigating Epstein and aggressively intimidated a victim to scare her away from proceeding to trial against him. These efforts have been made not for legitimate investigative reasons but rather for the purpose of discouraging the victims from cooperating with law enforcement (and, in at least one case, the investigating grand jury) and from filing civil lawsuits to vindicate their rights.

7. The enterprise is also described in the complaint, which allegations M.J. expressly incorporates into this statement as part of the description of the enterprise. The enterprise included, at a minimum, a group of individuals associated in fact to assist Epstein in recruiting and procuring minor girls and obtaining criminal gratification of his illegal sexual interest in minor girls and <u>at least</u> two individuals (Ghislaine Maxwell and Jean Luc Brunel) who were free to act independently and advance their own interests, including their own sexual interests.

    a. The persons constituting the enterprise included a group of individuals associated in fact. These individuals include Epstein, Sarah Kellen, Nadia Marcinkova, Ghislaine Maxwell, and Jean Luc Brunel, as well as other yet unnamed persons whose names M.J. intends to identify during the discovery phase of this case.
    b. The criminal enterprise had a definite hierarchal structure, although all the details of that structure are not completely know to M.J.. Through discovery, M.J. intends to ascertain the precise structure of the enterprise that enabled Epstein to commit sexual crimes against here. While M.J. does not currently know all of the details of the structure, she does know that the enterprise operated together on a continuing basis, in an extremely efficient and organized manner, with largely the same personnel for a common purpose. The shared purpose of the enterprise was to satisfy Epstein's, as well as certain other individual's, illegal interest in having sexual activities with minor girls as well. The enterprise was not a mere informal conspiracy, but had a definite clear structure. Epstein served effectively as the leader, C.E.O. or "Boss" of this organization, directing his various levels of underlings how to recruit and procure young girls for his sexual activities and when to bring the girls to his mansion as well as how to avoid law enforcement

detection. Epstein's key "lieutenant" in the Palm Beach branch of this national and possibly international organization was Kellen, who served as both his scheduler and a recruiter/procurer of the girls. This was an important function, as the recruiting was necessary to satisfy Epstein's desire to abuse a large number of different minor girls with different (albeit similar) physical attributes and the scheduling was necessary to insure that the minor girls would be brought to Epstein's mansion to be sexually abused and prostituted at a time when Epstein was there (but not at the same time, when they might learn of other girls' identities and possibly become emboldened to report his activities to law enforcement.) Scheduling was also necessary to ensure secrecy, so that as few persons as possible were aware that minor girls were coming at unusual hours to Epstein's mansion. Kellen also needed (directly or indirectly) to make transportation arrangements for many of the girls, as they were often too young to drive themselves to and from the mansion. Marcinkova also served as a recruiter and helped Epstein satisfy his criminal sexual desires by, on occasion, directly participating in sexual abuse and prostitution of the minor girls. Epstein, Kellen, and Marcinkova all took steps to conceal the existence of the enterprise and to discourage the girls from reporting the sexual abuse and prostitution to law enforcement or other authority figures. Epstein also used otherwise-legitimate business activities to help further the purpose of the criminal enterprise. These apparently legitimate activities provided "cover" for Epstein and his associates to commit the crimes. Ghislaine Maxwell and Jean Luc Brunel also helped to provide "cover" for the enterprise by creating the impression that there were legitimate modeling opportunities and other legitimate opportunities available for the girls if they went to see Epstein. Epstein also maintained the appearance of an extremely wealthy, upstanding and prominent figure to discourage the minor girls from reporting the abuse to law enforcement. To further impress the underage minor victims, he would tell them that he was a famous scientist, a brain surgeon, an inventor of various products including a state of the art liposuction device. He would also brag about the famous people with whom he was good friends. By projecting an image of financial power (and, relatedly, strong political connections to prominent politicians and current and former government officials and personal connections to prominent scientists), Epstein hoped to discourage the minor girls from reporting what he was doing to them by making it appear that they would not be believed. These business activities helped Epstein secure the financial resources to commit the crimes against the minor girls and to pay for prostituting them. For example, the activities paid for maintaining the mansion where the girls were abused and paid for the cellular telephones and other means of communications that were used to recruit and procure the girls. The business activities also helped to provide the funds to pay Kellen and Marcinkova large sums of money to participate in the illegal enterprise and make payments to the girls for performing sexual acts. In sum, Epstein and the persons under his direction associated in fact and functioned as a continuing unit. This enterprise produced a course of conduct that lead to a pattern of criminal activity involving more than 100 instances of sexual abuse and prostitution of minor girls. This enterprise was the vehicle for Epstein to commit his crimes against M.J. and other

      minor girls and operated on a continuing basis from June 2002 to November 2005 (and, in regard to witness tampering and harassment, through at least early 2008). The enterprise enabled Epstein to sexually abuse and prostitute M.J. in particular on more than 20 occasions from February 2003 through June 2005.

    c. Epstein served as the effective leader or "C.E.O." of the enterprise.

    d. Epstein was associated with the enterprise as its effective leader or "C.E.O."

    e. Epstein directed the affairs of the enterprise and the others in the enterprise responded to his commands, although Ghislaine Maxwell and Jean Luc Brunel acted independently to advance their own interests (including sexual interests) along with the interests of Epstein.

    f. Based on the facts that she currently possesses, M.J. specifically alleges and intends to prove both that (i) Epstein was an individual separate and disctinct from the enterprise and (ii) the defendant was a member of the enterprise, namely that he served as the effective leader of the enterprise. With regard to point (i), the illegal enterprise had a definite structure and operational function apart from Epstein. The structure is described in greater detail in this statement in answer 5.b above. With regard to point (ii), the defendant was a member of the enterprise and served to execute many of the decisions and activities of the enterprise and to command the execution of others. Epstein personally engaged in sexual abuse of minor girls, including M.J.. Epstein also directed others to engage in sexual abuse of minor girls, including Marcinkova. Epstein also procured girls for prostitution and caused these girls to be prostituted. Epstein also served as the leader of the enterprise.

    g. Epstein was a direct perpetrator of the racketeering activity. In particular, Epstein engaged in criminal acts of sexual abuse and prostitution with minor girls, as well as procuring girls for prostitution. He also directed others (i.e., Marcinkova) to engage in such criminal acts and served as the leader of the criminal enterprise.

8. The relationship between the pattern of criminal activity and the enterprise is not completely known to M.J. at this time, and it is not known how much money or other consideration was generated by the enterprise through these illegal means. Through discovery, she intends to understand the relationship more fully. At this time, however, as described in addition in the complaint and parts 5, 6 and 7 in this statement, there was a criminal entity separate and apart from the pattern of activity in which it engaged. The pattern of criminal activity was the series of crimes committed by Epstein and others, and includes the specific crimes identified in part 5.a. above. These offenses were closely related and formed a clear pattern, as described in part 5.b above. These acts included acts of sexual abuse and procuring the prostitution of minors by Epstein personally and by Marcinkova acting at Epstein's direction. In contrast, the enterprise was the group of persons who associated together for the common purpose of engaging in the criminal course of conduct described at greater length elsewhere in this statement, including part 5.e above. The group of persons included Epstein, Kellen, Marcinkova, Maxwell, and Brunel and others whose identity is, at this time, unknown to M.J..

9. In this part of the statement, M.J. will provide a description of the relationship between the otherwise-lawful activities of the enterprise and the criminal activities of the enterprise. The lawful and unlawful activities of the enterprise have been described in addition in paragraphs 10 through 18 and 42 through 43 of the complaint and previous answers found in parts 5, 6

and 7 above (which M.J. expressly incorporates into her answer here). The usual and daily activities of the criminal enterprise included scheduling meetings, activities, and other events for Epstein – including scheduling "private time" in his mansion for Epstein to commit sexual crimes against minor girls. Kellen served as Epstein's scheduler, scheduling both otherwise-lawful activities to provide "cover" for Epstein as well as the illegal sexual activities. The exact frequency with which the sexual crimes took place varied and is not known, at this time, to M.J.. However, when Epstein was in West Palm Beach, it often occurred on a weekly or daily basis (and, in some instances, took place on several times during a single day). The scheduling was designed to secure a private place in Epstein's mansion when few other persons would be present at the mansion, so as to reduce the chance of detection of Epstein's sexual abuse and prostitution as well as to make it more difficult for the minor girls to report his actions to law enforcement or other authorities. The usual activities of the enterprise also included maintaining the mansion and securing means of communication (i.e., cellular telephones) to recruit minor girls and procure them for prostitution. The activities further included arranging transportation for the girls to and from the mansion if it was necessary. The enterprise also attempted to make Epstein appear to be an upstanding and law-abiding member of community and a successful businessperson, for reasons described in paragraph 6.b above. The enterprise served as the usual way in which Epstein would obtain sexual gratification.
10. Through his criminal enterprise, Epstein received perverse and unlawful sexual gratification from sexually abusing minor girls and engaging in acts of prostitution with them. He also received perverse sexual gratification from directing others (e.g., Marcinkova) to sexually abuse and prostitute minor girls.
11. While M.J.'s civil action alleges violations of the Florida Civil RICO statute rather than violations of the federal civil RICO statute, it should be noted that means of interstate communications were used to perpetrate the crimes against minor girls (including M.J.), including cellular and other telephones that Epstein used, or caused to be used, to arrange his illegal sexual activities and to recruit additional minor girls to participate in these activities. Through his recruitment and procuring of young girls, Epstein's activities directly affected interstate commerce.
12. Based on the information currently known to her, M.J. does not allege that Epstein, who is a billionaire banker, used the enterprise to personally make a financial profit or to obtain the collection of an unlawful debt, only because that information has not yet been made available to MJ. Epstein did, however, make payments to and prostitute the minor girls for the sexual gratification that he obtained from them and to discourage them from reporting his crimes to law enforcement and other authorities. Epstein also has, through his criminal organization, prostitutes underage girls to others, and Epstein and the criminal organization gained valuable consideration from that activity, although it is unknown the type and amount of remuneration at this time.
13. Based on the information currently known to her, M.J. does not allege that Epstein, who is a billionaire banker, used the enterprise to obtain or maintain control of a business enterprise or real property. Epstein did, however, use his West Palm Beach mansion (and his various other properties including his personal island) to perpetrate the crimes against the then-minor girls. He also used his financial success to provide "cover" for his crimes, as described in part 6.b above.
14. The criminal enterprise is described in the complaint and part 6 of this statement above,

which description M.J. incorporates here.
   a. The enterprise including persons unknown to M.J., but at least included Epstein and his paid assistants Sarah Kellen and Nadia Marcinkova as well as associates of Epstein (who were free to act independently and to advance their own interests) Ghislaine Maxwell and Jean Luc Brunel
   b. Under the direction of Epstein, Kellen, Marcinkova and others whose names are unknown to M.J. arranged for minor girls to come to Epstein's mansion where he could sexual abuse them and prostitute them to satisfy his perverse sexual desires, as well as the perverse sexual desires of Ghislaine Maxwell and Jean Luc Brunel. Kellen and Marcinkova were responsible for recruiting the girls and procuring them for prostitution. Kellen was also responsible for scheduling a time when both Epstein and the minor girl could meet together at Epstein's mansion for the sexual abuse and for making travel arrangements (if necessary) for the girls. Kellen was also responsible for ensuring the privacy of the room in Epstein's mansion where Epstein would sexually abuse the girls. Marcinkova would participate in abusing and prostituting the girls for Epstein's sexual gratification. Kellen and Marcinkova received payments and other forms of compensation from Epstein for performing these illegal activities and for participating in the enterprise. Epstein, Kellen, and Marcinkova also all took steps to discourage the girls from reporting these crimes to law enforcement, including making cash payments to the girls. Ghislaine Maxwell and Jean Luc Brunel helped to persuade the girls that legitimate modeling opportunities could be had if they went to see Epstein.
   c. As a result of the criminal enterprise, M.J. (then a minor) suffered criminal sexual abuse at the hands of Epstein. As alleged in greater detail in the complaint, this abuse lead to significant past and future physical injury, pain and suffering, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of privacy, and other damages, including consequential damages from Epstein controlling, manipulating and coercing her into a perverse and unconventional way of life for a minor. In addition, the time involved in the abuse created lost opportunities to pursue other activities (including economic activities) and lead to past and future financial and proprietary losses to M.J., as well as the need for psychiatric services. M.J. has also suffered a loss of income, a loss of capacity to earn income in the future, and a loss of the capacity to enjoy life. It has also lead to the need to file this civil suit, with consequent attorney's fees. All of these damages were caused by, and proximately caused by, the criminal enterprise and its criminal acts. All of these injuries were inflicted directly on M.J. and occurred by reason of the criminal acts of the enterprise, including the acts of sexual abuse by Epstein.
   d. The defendant "person" in the Florida Civil RICO action is, <u>at this time</u>, only defendant Epstein. Defendant Epstein is associated with a criminal enterprise that conducted and participated, both directly and indirectly, in a pattern of criminal activity in violation of both Florida and federal criminal law. The exact relationship between Epstein and the criminal enterprise is described in greater detail in parts 5 and 6 above.
15. The criminal conspiracy involving the enterprise is described in the complaint as well as parts 5, 6, and 7 above. M.J. expressly incorporates that information into her statement here. The conspiracy was formed of Epstein, Kellen, Marcinkova, and many others, who agreed to arrange for illegal sexual gratification by Epstein through the sexual abuse and prostitution of minor girls both by Epstein personally and by others (i.e., Marcinkova) while he watched, as

well as to provide illegal sexual gratification to Ghislaine Maxwell and Jean Luc Brunel. Certain other names of other criminal enterprise members and co-conspirators are known yet currently unnamed, and many other names are currently unknown but Plaintiff intends to learn the names and roles of all involved in the criminal activity of this enterprise. The many enterprise members conspired to commit similar crimes and to conceal those crimes also in furtherance of the criminal enterprise. The object and substance of the conspiracy was to obtain minor girls for Epstein so that he could satisfy his perverse sexual interest in minor girls, to recruit minor girls to be abused and prostituted for his gratification, to keep the existence of the sexual abuse from being learned by law enforcement and other authorities, and to discourage the victims from reporting the abuse to authorities, as well as to provide sexual gratification to Maxwell and Brunel. The conspiracy started in approximately June 2002 in West Palm Beach, Florida, and other locations. The sexual abuse of the minor girls appears to have, at least temporarily, ceased in approximately 2005. The conspiracy extended beyond November 2005 to early 2008 (and perhaps later) in its efforts to keep the criminal conspiracy unknown, as described in part 5.f above. The conspiracy committed numerous overt acts. For example, Kellen and Marcinkova arranged for minor girls to be brought to Epstein's West Palm Beach mansion so that he could sexually abuse the girls and obtain sexual gratification. Epstein sexually abused minor girls at his mansion and made payments to them and otherwise prostituted them there.

16. M.J. suffered injuries, including financial and proprietary injuries, as described in part 13.C above.
17. The enterprise injured M.J. and the other minor girls by enabling Epstein to sexually abuse and prostitute the girls.
18. Defendant Epstein is liable for all the damages for his criminal activity and the activity of his criminal enterprise. (If additional defendants are added to the complaint, these other defendants may also be jointly and severable liable for the damages.) The damages for which Epstein is liable include compensatory damages (including damages for emotional distress as well as damages for financial and proprietary losses), attorney's fees, and such further relief as the Court deems just and proper. The amount of these damages is significant. These damages are trebled by operation of Florida Statutes 772.104. M.J. is aware of the provision in Florida Statutes 772.104(3) ("In no event shall punitive damages be awarded under this section"), but is nonetheless entitled to punitive damages by virtue of her other counts in her complaint. She is seeking punitive damages for Epstein's outrageous and egregious conduct and crimes under other provisions of law in this lawsuit.
19. All of the above answers must be read in light of the complaint that has been filed in this case. M.J. expressly incorporates by reference her complaint as part of the answer to each of the above questions. Whenever the word "include" or its variations appears in this statement, the information that follows is not intended to be an exclusive listing.